Case: 3:05-cv-00295-bbc Document #: 20 Filed: 08/10/05 Page 1 of 15

Document Number  Case Number
                 05-C-0295-C
United States District Court
Western District of Wisconsin
Theresa M. Owens

Filed/Received
08/10/2005 12:59:45 PM CDT

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WISCONSIN COALITION FOR ADVOCACY,
INC.,

                    Plaintiff,

    v.

STATE OF WISCONSIN DEPARTMENT OF
PUBLIC INSTRUCTION and ELIZABETH
BURMASTER, in her official capacity as State
Superintendent of Public Instruction,

                    Defendants.

OPINION AND
ORDER

05-C-295-C

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Wisconsin Coalition for Advocacy brought this civil action for declaratory and injunctive relief against defendants State of Wisconsin Department of Public Instruction and Elizabeth Burmaster in order to acquire access to confidential records relating to certain students with disabilities at the Abraham Lincoln Elementary School in Monroe, Wisconsin. Plaintiff is pursuing claims under the Protection and Advocacy for Individuals with Mental Illness Act of 1986 (PAIMI), 42 U.S.C. §§ 10801-10851, the Developmental Disabilities Assistance and Bill of Rights Act ("DD Act"), 42 U.S.C. §§ 15001-15115 and the Protection and Advocacy of Individual Rights Act (PAIR), 29 U.S.C. § 794e. The case is before the

1

court on plaintiff's motion for a permanent injunction to gain access to the records. (In addition, plaintiff requests that the court enjoin defendants from interfering in any way with its investigation of abuse at the Abraham Lincoln Elementary School. Because plaintiff fails to address this request in its brief, I will disregard it. <u>Central States, Southeast and Southwest Areas Pension Fund</u>, 181 F.3d 799, 808 (7th Cir. 1999) ("Arguments not developed in any meaningful way are waived.").) Jurisdiction is present. 28 U.S.C. § 1331.

All three statutes on which plaintiff relies to gain access to the students' records require it to know the names of the individuals who may be subject to abuse or neglect and to obtain or at least try to obtain permission from those students' legal representatives. Because plaintiff fails to propose any facts showing that it has met those statutory requirements or to explain why they may not apply to plaintiff, I will deny its motion for permanent injunctive relief.

For the sole purpose of deciding the pending motion, I find the following facts to be material and undisputed.

FACTS

Plaintiff Wisconsin Coalition for Advocacy, Inc. is a non-stock corporation that has been designated by the State of Wisconsin to protect people with disabilities and to advocate on their behalf pursuant to both federal law (the Developmental Disabilities Assistance and

2

Bill of Rights Act, as amended, 42 U.S.C. §§ 15001-15115, the Protection and Advocacy for Individuals with Mental Illness Act, as amended 42 U.S.C. §§ 10801-10851, the Protection and Advocacy of Individual Rights 29 U.S.C. § 794e) and state law.

In October 2004, the parents of G.M., a child with disabilities who attended the Abraham Lincoln Elementary School in Monroe, Wisconsin, complained to plaintiff that a staff member at the school had physically restrained and dragged G.M. to a seclusion room causing her both physical and emotional trauma.

On February 27, 2005, Channel 27 News in Madison, Wisconsin informed defendant Department of Public Instruction that it intended to air a report about a seclusion room in a school district, but would not identify the district. On March 1, 2005, a television reporter from Channel 27 News telephoned plaintiff and requested its reaction to an investigation regarding the use of a locked seclusion room at the Abraham Lincoln Elementary School. Plaintiff's managing attorney, Jeffrey Spitzer-Resnick, viewed the Channel 27 investigative report, which showed a locked, dark, closet-like room and featured interviews with children who had been in that room and their parents. In the telecast, the former principal of the school tried unsuccessfully to convince the reporter that such a room did not exist and the Superintendent of the Monroe School District justified its use, even if it violated fire codes.

On March 2, 2005, Channel 27 aired its report. As a result of the investigation, additional parents who either knew or suspected that their children had been locked in the

3

seclusion room at the school contacted plaintiff and requested advocacy assistance. Because many of the children involved are non-verbal, or have limited verbal capacities, some of the parents could not determine whether their children were placed in the locked seclusion room.

Defendant investigated the use of seclusion at the school to determine whether that use complied with state and federal special education requirements, acting pursuant to Wis. Stat. § 115.762(3)(g) and the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400-1487. Defendant's investigation included an on-site review of the lower-level seclusion room at the school and interviews with school district employees. It covered all use of seclusion at the school during the 2004-2005 school year. Defendant found that during that time, a total of six children were placed in seclusion in two different rooms. Two of the six children were secluded in a room on the main level of the school building. Defendant received no complaints related to this room. The other four children had been placed in the lower-level seclusion room that was the focus of defendant's investigation.

Defendant found the lower-level seclusion room to be approximately five feet by nine feet in size, with one wall that does not reach the ceiling, dark grey carpeting on the floor and all four walls, a fluorescent ceiling light and a window in the door. Defendant found also that the door to the lower-level seclusion room had a lock and no interior door knob when the four children were secluded in there.

Because the school district did not maintain a log, defendant was unable to determine

4

the exact number of times that the four children were placed in seclusion. However, based on interviews, defendant believed that one student was placed in the room 10-15 times over a 2-3 week period, another student was placed in the room one time, another student was placed in the room 2-3 times and the fourth student was placed in the room on multiple occasions.

The student identified in plaintiff's complaint as G.M. no longer resides in the Monroe school district. G.M. was placed in the lower-level seclusion room before the 2004-2005 school year. On March 3, 2005, G.M.'s father contacted defendant and expressed concerns about the number of times his child had been placed in seclusion. In addition, he described a particular incident in which a teacher left marks on his son's arm while removing him to the seclusion room. The allegations regarding that incident were investigated by the Monroe Police Department.

On March 3, 2005, defendant received information indicating that the parent of a seventh student, A.U., who is represented by plaintiff, had alleged that A.U. had been placed in seclusion at the Abraham Lincoln Elementary school during the 2004-2005 school year. Through its investigation, defendant determined that A.U. had not been placed in seclusion during the 2004-2005 school year. On June 3, 2005, the Monroe School District's attorney wrote plaintiff stating that A.U. had been placed in a seclusion room prior to the 2004-2005 school year. The attorney forwarded defendant a copy of that letter on June 6, 2005.

In a letter dated April 7, 2005, defendant sent its investigative findings to District Administrator Edward Van Ravenstein. Defendant did not send copies of these findings to the parents of children who had been placed in the seclusion room. The April 7 letter did not name any individual children. By the time defendant issued the April 7 letter, the school district had placed a moratorium on the use of the seclusion room to continue until all corrective actions required by defendant were completed. On April 11, 2005, plaintiff obtained a copy of defendant's investigation findings, informed defendant that it was conducting its own investigation and asked defendant either to provide a copy of defendant's investigation file or, in the alternative, to send a copy of its findings to the parents of the six children who had been placed in seclusion at the school during the 2004-2005 school year. On April 22, 2005, in-house counsel for defendant, Sheila Ellefson, asked plaintiff to provide releases for any confidential information contained in its investigative file. That same day, plaintiff sent an email to Ellefson asking why defendant would not send the parents of the affected children a copy of defendant's April 7, 2005, letter to the district superintendent. Ellefson responded by stating that defendant had directed the district to conduct individual education plan team meetings for the six children and that defendant would be following up to insure that this process occurred. Ellefson stated that defendant was impressed by the district's commitment to address concerns about the seclusion room promptly and appropriately with parents and staff and that defendant believed that its direct intervention

6

in the individual education plan team communication and decision-making process would be unwarranted and possibly injurious to defendant's goal of fostering a strong parent-school relationship.

On April 22, 2005, plaintiff informed Ellefson that it was trying to avert litigation by suggesting that defendant provide its investigative findings to the parents of the affected children. That same day, plaintiff sent Ellefson a release for one of the affected students and a letter demanding the entire unredacted investigative file. Plaintiff indicated in the letter that it was "asserting [its] federal P&A authority," but did not cite any specific legal authority to support plaintiff's request for confidential pupil information. On April 26, 2005, Ellefson sent plaintiff an email requesting specific citations to legal authority supporting plaintiff's assertion that, as the state's designated protection and advocacy agency, it had authority to obtain an unredacted version of defendant's investigation file. Plaintiff complied with Ellefson's request on April 27, 2005.

On May 10, 2005, defendant rejected plaintiff's request for an unredacted version of defendant's investigation file. Defendant explained in writing that the denial was based on court decisions, state and federal pupil confidentiality laws, including the IDEA and the Family Educational Rights and Privacy Act, and preliminary guidance received from the Family Policy and Compliance Office of the United States Department of Education. On May 12, 2005, defendant provided plaintiff with a version of its investigation file from

7

which defendant had redacted personally identifiable information about five of the six children it found had been placed in seclusion at the Abraham Lincoln Elementary School during the 2004-2005 school year. Personally identifiable information about the sixth child, K.J., had not been redacted because that child's mother had signed a form authorizing plaintiff to have access to the child's educational records. Defendant confirmed that K.J. had been placed in the seclusion room unsupervised with the door locked. In addition, defendant provided plaintiff with G.M. and A.U.'s personally identifiable information because their parents had signed consent forms authorizing disclosure. Plaintiff has not provided defendant with written parental consent authorizing the release of personally identifiable information about any students other than K.J., G.M. and A.U.

Defendant believes that it has given plaintiff unredacted copies of all documents in its investigation file with the exception of three pages. One document from which personally identifiable information was redacted is a February 24, 2005 email message from Peter J. Condon to the district's school board president. Jack Marker of defendant Department of Public Instruction redacted two names from that document. Those names are not connected with any students who were subject to seclusion at Abraham Lincoln Elementary School. Another of the three pages contains handwritten notes by a substitute teacher, stating:

> October 15
> _____[the student whose name is redacted] was put in time out for 2-3 (early morning) minutes because he was using unkind words and not

8

>following directions. I realize that he didn't like it, however, it was the right decision as he was much better the rest of the day.

This is the only mention of seclusion on the page. The remaining three paragraphs discuss whooping cough, a party and a report of the student's day. This student is one of the four defendant identified as having been in the lower-level seclusion room. The last of the three redacted pages is an email message dated April 26, 2005, from Joe Monroe of the school district to Jack Marker of defendant Department of Public Instruction. In the email, Monroe states that the district has contacted various parents including a mother who supported the use of the seclusion room. The parent's name has been redacted. This person has been identified by defendant as the mother of a child who was not in seclusion at the elementary school during 2004-2005 but had been in a previous year.

Defendant has contacted, or attempted to contact the parents of the six students to confirm that the individualized education plan team meetings have occurred, that the use of seclusion with their child was discussed and that any of the questions regarding seclusion had been answered. The four parents that defendant has successfully reached so far have stated that the seclusion issue had been discussed at the individualized education plan team meetings and that their questions had been answered. Defendant gave those parents its direct contact information for reporting any questions or concerns. Defendant is continuing its effort to reach the remaining parents. At no time during these contacts with parents has

9

defendant referred them to plaintiff or any other source of legal assistance.

## OPINION

Plaintiff argues that defendant's withholding of unredacted records prevents it from learning the identities of all six children who were locked in the seclusion room at the Abraham Lincoln Elementary School. According to plaintiff, it is entitled to see these records because it is part of the protection and advocacy system for which Congress provided rights under the Protection and Advocacy for Individuals with Mental Illness Act of 1986 (PAIMI), 42 U.S.C. §§ 10801-10851, the Developmental Disabilities Assistance and Bill of Rights Act ("DD Act"), 42 U.S.C. § 15001-15115, and the Protection and Advocacy of Individual Rights (PAIR), 29 U.S.C. § 794e. In opposition, defendant contends that the laws cited by plaintiff do not authorize access to students' educational records without the permission of the students' parents. Defendant cites 20 U.S.C. § 1232g(b)(1), which holds that with a few exceptions, educational agencies or institutions forfeit their right to federal funds if they have a policy or practice of permitting the release of education records or personally identifiable information of students without the written consent of their parents.

As an initial matter, plaintiff is the moving party and therefore has the burden of showing the absence of any disputed material fact and its entitlement to injunctive relief. Fed. R. Civ. P. 56(C); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (party seeking

summary judgment always bears initial responsibility of informing court of basis for its motion and identifying those portions of pleadings, depositions, answers, admissions and affidavits that demonstrate absence of genuine issue of material fact). Although plaintiff's motion began as one for preliminary injunction, I provided the parties additional time to expand their arguments to fit a motion for permanent injunction. Plaintiff declined to use this opportunity, see Plt.'s July 6, 2005 letter to court, and therefore missed an opportunity to argue and propose facts showing how its request for records meets all the provisions of the three statutes.

The extensive time plaintiff spent arguing why PAIMI, the DD Act and PAIR allow it access to all records in this case is wasted because plaintiff failed to address key provisions of all three acts. For example, plaintiff failed to show that PAIMI authorizes it to have access to defendant's records. First, plaintiff did not show that it exhausted its administrative remedies or that it was unreasonable to do so. 42 U.S.C. § 10807 requires an "eligible system" to pursue administrative remedies in a timely manner, where appropriate, before commencing a legal action in federal or state court. Plaintiff failed to propose any facts regarding the Act's exhaustion requirement or argue its inapplicability.

Second, the statutes do not authorize plaintiff to have access to records without first knowing the individuals' names and seeking the permission of the students' legal representatives. Under PAIMI, PAIR and the DD Acts, advocacy systems, such as plaintiff,

11

may be provided access to all records of 1) clients of the system who have authorized access; 2) individuals who are unable to provide authorization for access because of their mental or physical condition and who do not have a qualified legal representative and with respect to whom a complaint has been received and there is probable cause to believe that such individual has been subject to abuse and neglect; and 3) any individual with a mental illness who has a legal representative that fails or refuses to act on behalf of the individual, even after the system contacts the representative. 42 U.S.C. § 10805(4)(A)-(C); 42 U.S.C. § 15043(2)(I); 29 U.S.C. § 794e(f)(2).

According to plaintiff, it does not know the names of the five students about whom it would like to receive information. Plt.'s Br., dkt. #16, at 12. It argues that defendant's refusal to provide the names of the five individuals who were placed in the seclusion room at the Abraham Lincoln Elementary School prohibits it from knowing whether it has received a complaint from the unnamed individuals. Id. However, the statutes assume that plaintiff knows the names of the individuals being subject to abuse and neglect before it requests access to their records. See, e.g., 42 U.S.C. § 15043(2)(I)(ii)(III) (advocacy system may gain access to records of *individual* who does not have legal representative and about whom complaint has been received regarding her treatment, if probable cause exists that such *individual* has been subject to abuse and neglect) (emphasis added); 42 U.S.C. § 10805(a)(4)(B)(iii) (same). The statutes assume that someone must approach plaintiff with

12

the name of an individual that she suspects is being subject to abuse or neglect and that it is not plaintiff's responsibility to go on a fishing expedition to discover names. If no one approaches plaintiff with names but plaintiff suspects that a facility is subjecting individuals to abuse or neglect, plaintiff may advertise its services to the community in order to encourage people to come forward with specific complaints.

Once an advocacy system has names of individuals, the statutes require it to seek permission from the individuals' legal representatives, if they exist. Presumably, the individuals involved in this case are minors who most likely have legal representatives. A basic policy behind the statutes was to involve family members in advocating for the rights of individuals with mental illness. For example, under PAIMI, Congress found that:

> [F]amily members of individuals with mental illness play a crucial role in being advocates for the rights of individuals with mental illness where the individuals are minors, the individuals are legally competent and choose to involve the family members, and the individuals are legally incompetent and the legal guardians, conservators, or other legal representatives are members of the family.

42 U.S.C. § 10801(a)(2).

According to the statutes, it is not the responsibility of defendant to provide the names of the individuals to plaintiff, but a choice made by the individuals' legal representatives. Indeed, defendant provided plaintiff with personally identifiable information about the students whose parents had signed consent forms authorizing

13

disclosure of that information. Although plaintiff could gain access to a student's records upon a showing that the students' legal representative refused to advocate for her, the statutes require plaintiff to contact the representative and offer assistance to the representative. 42 U.S.C. § 10805(4)(C); 42 U.S.C. § 15043(a)(2)(I)(iii). The statutes allow plaintiff access to the records of students who do not have legal representatives, but it is still plaintiff's burden to show that the students in question do not have such representatives. The bottom line is that plaintiff cannot request access to the students' records without first knowing the names of the students or their legal representatives and then it must show that it has attempted to secure permission from the students' legal representatives to gain access to those records. Because plaintiff has not shown why it should be able to proceed without knowing the names of the individual students or why it is not necessary to secure permission from the students' legal representatives, I will deny its motion for permanent injunctive relief.

## ORDER

IT IS ORDERED that

1. Plaintiff Wisconsin Coalition for Advocacy's motion for injunctive relief is DENIED;

2. The clerk of court is directed to enter judgment in favor of defendants State of

Wisconsin Department of Public Instruction and Elizabeth Burmaster and close this case.

Entered this 10th day of August, 2005.

> BY THE COURT:
> /s/
> BARBARA B. CRABB
> District Judge

15